## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

BARBARA MENOCH,

      Plaintiff,


v.                      **MEMORANDUM OF LAW & ORDER**
                                Civil File No. 11-3424 (MJD/JSM)


ANDY BELLOWS, individually and in his official capacity,
MATTHEW HENDRICKSON, individually and in his official capacity,
CASSANDRA JOHNSON, individually and in her official capacity,
BRIAN LINDQUIST, Chief of Police, individually and in his official capacity,
and CITY OF FARMINGTON,

      Defendants.


_____

Kenneth U. Udoibok, Udoibok, Tupa & Hussy, PLLP, Counsel for Plaintiff.

Joseph E. Flynn and Pierre N. Regnier, Jardine Logan & O'Brien PLLP, Counsel for Defendants.

_____


## I.    INTRODUCTION

This matter is before the Court on Defendants Andy Bellows, Matthew

Hendrickson, Cassandra Johnson, Brian Lindquist, and City of Farmington's

motion for summary judgment.  [Docket No. 13]  The Court heard oral argument

on April 5, 2013.  For the reasons that follow, the Court denies Defendants'

motion.

## II.    BACKGROUND

### A.    Factual Background

At the outset, the Court notes that the parties dispute numerous facts at

issue in this litigation.  For the purposes of the Defendants' Motion for Summary

Judgment, therefore, the Court views the factual record in a light most beneficial

to Plaintiff, as the non-moving party.  The Court does not, however, make any

specific findings of fact.

### 1.  Police Receive Report of Person Threatening Suicide

On June 17, 2011, the Police Dispatching Center for the City of Farmington

received a call from Plaintiff Barbara Menoch's step-daughter Tracy advising the

police that Plaintiff threatened to kill herself and that Plaintiff may have an

undiagnosed bipolar disorder.  (Ex. G to Regnier Aff., Incident Report.)  Plaintiff

expected that her husband and Tracy's father, Ian Menoch, would be discharged

from the hospital that day following a surgery for colon cancer that was

performed on June 5, 2011.  (Id.; Ex. B to Regnier Aff., Menoch Dep. 21-25, 33.)

Tracy was supposed to bring Ian to the home that he shared with Barbara,

however, Ian decided to stay with friends rather than return home.  (Incident

Report; Menoch Dep. 33.)  Plaintiff and Ian, who used Tracy's phone, exchanged

text messages.  (Menoch Dep. 33-36.)  In one of Plaintiff's text messages, she

stated:  "if you want me to kill myself, I will.  You do not want me anymore."

(Id. at 35.)  In response to this text message, Tracy called the Police Dispatching

Center.  (Incident Report.)

Plaintiff sent this text message while driving to her home.  (Incident

Report.)  Plaintiff believes she arrived at her home sometime between 10:00 and

10:30p.m.  (Menoch Dep. 45.)  Plaintiff also claims that she had not eaten since

noon that day, had not taken her normal second dose of insulin at 9:30p.m., and

as a result was more irritated, agitated, and lightheaded.  (Menoch Dep. 45-47.)

Defendants Cassandra Johnson, Andy Bellows, and Matthew Hendrickson

are police officers with the City of Farmington Police Department.  (Compl. ¶¶ 4-

6.)  In response to Tracy's call, Defendants Johnson, Bellows, and Hendrickson

reported to Plaintiff's home to make a health welfare check.  (Incident Report.)

Based upon what the Defendants learned through dispatch and the Plaintiff's

behavior that they observed while at her house, Defendants Johnson, Bellows,

and Hendrickson determined that Plaintiff should be transported to a hospital

and placed on a 72-hour hold pursuant to the Minnesota Commitment and

Treatment Act.  (Ex. C to Regnier Aff., Johnson Dep. 54-55, 57, 60-61, 82, 88; Ex. E

to Regnier Aff., Bellows Dep. 32, 50, 55-56.)

Defendants maintain that they made this decision due in part to their

interactions with the Plaintiff.  They maintain that Plaintiff became upset after

Officer Johnson identified herself as a police officer and stated that they needed

to speak to her.  (Johnson Dep. 23-26, 56, 81.)  Defendants maintain that Plaintiff

shouted at the Officers to get off her property and went into her house.  (Id.)

They heard her screaming while she was in the house and could not see her.

(Bellows Dep. 21-25.)  They attempted to talk to her while she was in the house

and the Officers were outside, but she continued to yell.  (Johnson Dep. 27-28.)

Officer Hendrickson determined that it was necessary to go into the house after

Plaintiff.  (Hendrickson Dep. at 25-29, 31, 35, 48-49.)  Officer Hendrickson

confronted Plaintiff and she continued to scream.  (Id.)  Officer Johnson

subsequently entered the house and Officer Bellows remained at the back door.

(Johnson Dep. 38-39, 83; Bellows Dep. 30-31.)  At some point after the Officers

entered the house and before the Paramedics arrived to transport Plaintiff to the

hospital, Defendants Johnson, Bellows, and Hendrickson had to use force to restrain Plaintiff. (Ex. D to Regnier Aff., Hendrickson Dep. 59-65; Johnson Dep. 40-41.)

### 2. Plaintiff's Recollection of Events

At her deposition, Plaintiff testified that after she arrived at her home, she went into the backyard to collect her laundry. (Menoch Dep. 49, 52.) When she went out her back door, she saw a female Police Officer coming through her bushes. (Id. at 49-52.) Plaintiff said that she had done nothing wrong and that the Officer should leave her property. (Id. at 52-53.) Plaintiff then went back into her house and shut, but did not lock, the screen door behind her. (Id. at 52-53, 106-107.)

Plaintiff testified that the next thing she remembers is that a male Officer came through the front door and into the laundry room where she was located. (Id. at 59-60.) She stated that the Officer grabbed her arms, pulled them behind her back, and used his knee to push against her butt to push her against a counter. (Id. at 60-61.) Plaintiff testified that the Officer did not say anything before doing this. (Id. at 60.) Plaintiff testified that at this time, her bladder "let go" and she urinated on herself and the Officer. (Id. at 61.) Plaintiff reports that

she has had bladder issues for 40 years.  (Id. at 195.)

In response, Plaintiff claims that the Officer threatened to taser her.  (Id. at 66.)  Plaintiff testified that the male Officer pushed her to the floor and then she was handcuffed.  (Id. at 66-68.)  Plaintiff further testified that after she was handcuffed, the first male Officer started kicking her and stating "you're not cooperating."  (Id. at 69-70.)  Plaintiff stated that the female Officer held her down while the male Officer kicked her.  (Id. at 69-71.)

Plaintiff testified that she was handcuffed and face down on the floor until the paramedics arrived.  (Id. at 73.)  She states that the Police then took the handcuffs off and she was able to get up.  (Id. at 76.)  She did not speak to the Paramedics at her house and was escorted to the ambulance by Officer Johnson.  (Id. at 77, 82-83.)  She does not recall whether she reported shoulder pain to the Paramedics.  (Id.)

While at the hospital on June 17, 2011, Plaintiff maintains that she made a handwritten statement of what occurred at her home.  (Ex. Q to Regnier Aff., Barbara Menoch's Handwritten Notes.)  The handwritten statement differs in several respects as compared to the Plaintiff's deposition testimony.  In her written statement, Plaintiff states that the female Officer (and not the male

officer) threw her on the floor.  (Id.)  In her written statement, Plaintiff states that the male Officer kicked her while the female Officer stood over her.  (Id.)  In her written statement, she states that one of the Officers pushed her face into the urine on the floor.  (Id.)  She did not testify about this at her deposition.

### 3.  Plaintiff's Alleged Injuries

Plaintiff claims that she sustained a torn rotator cuff in her right shoulder and that she had bruising on her left leg and on her arms and shoulders as a result of the June 17, 2011 incident.  (Compl. ¶ 16.; Menoch Dep. 94-96.)  She maintains that the pain from the bruising lasted four months and that she has no problems with her thigh today.  (Menoch Dep. 94-96.)  Plaintiff admits that she had prior problems with her shoulder and described it as a "frozen shoulder." (Menoch Dep. 94-96; 98-99.)  She had complained of shoulder pain in the few months leading up to the incident.  (Id.)

Pursuant to the hold, Plaintiff was taken to Fairview Ridges Hospital on June 17, 2011.  (Incident Report.)  The treating emergency room physician reported a past medical history to include chronic right shoulder pain.  (Ex. K to Regnier Aff., Plaintiff's Medical Records.)  She was described as a very angry woman that paced around the room and was "confrontational with every

statement that is made." (Id.) Plaintiff refused all pain medications and any

resources. (Id.)

After the incident, Plaintiff attended nine physical therapy sessions to help

relieve pain in her shoulder. (Menoch Dep 134.) Plaintiff also had two surgeries;

one operation to repair her torn rotator cuff and a second to fix a stitch that came

loose. (Menoch Dep. 100.) Plaintiff maintains that her shoulder hurts constantly

and she does not have complete use of it. (Menoch Dep. 99-100.) Plaintiff moved

out of her house and into an apartment approximately one week after the

incident. (Menoch Dep. 9, 75-76, 142.) She reports that she no longer felt safe

living in her home. (Id.) She also reports that she becomes emotional and

stressed whenever she sees a police car or police officer. (Id. 117.) Plaintiff also

claims that she lost an unidentified amount of income due to the incident. (Id. at

102-105.)

### B.     Procedural Background

On November 22, 2011, Menoch filed a lawsuit in this Court against the

City of Farmington ("the City"), Officer Bellows, Officer Hendrickson, Officer

Johnson, and Brian Lindquist, the Police Chief for the City of Farmington.

[Docket No. 1] The Complaint alleges:  Count One: Violation of 42 U.S.C. § 1983

by Defendants Bellows, Hendrickson, and Johnson; Count Two: Assault and

Battery by Defendants Bellows, Hendrickson, and Johnson; Count Three: False

Arrest and Illegal Imprisonment by Defendants Bellows, Hendrickson, and

Johnson; Count Four: Intentional Infliction of Emotional Distress by Defendants

Bellows, Hendrickson, and Johnson; Count Five: Negligence by Defendants

Lindquist and the City; Count Six: Violation of 42 U.S.C. § 1983 by the City;

Count Seven: Punitive Damages against Defendants Bellows, Hendrickson, and

Johnson. [Docket No. 1] Defendants now move for summary judgment on all

claims based on qualified immunity, immunity under the Minnesota Civil

Commitment Act, official immunity, lack of causation, and failure to establish the

requisite elements underlying Plaintiff's allegations.

Plaintiff has agreed to "waive" the claims asserted in Count Five

(Negligence by Defendants Lindquist and the City) and Count Six (Violation of

42 U.S.C. § 1983 by the City). The Court's Order, therefore, will not address

Counts Five and Six.

III. DISCUSSION

A. Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most

favorable to the non-moving party, there is no genuine dispute as to any material

fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  The party seeking

summary judgment bears the burden of showing that there is no disputed issue

of material fact.  <u>Celotex</u>, 477 U.S. at 323.  "A dispute is genuine if the evidence is

such that it could cause a reasonable jury to return a verdict for either party; a

fact is material if its resolution affects the outcome of the case."  <u>Amini v. City of

Minneapolis</u>, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing <u>Anderson v. Liberty

Lobby, Inc.</u>, 477 U.S. 242, 248, 252 (1986)).

    **B.**    **Federal Law Claims**

Plaintiff's first cause of action alleges that Officers Bellows, Johnson, and

Hendrickson violated 42 U.S.C. § 1983 by using excessive force during the June

17, 2011 incident.  Relatedly, Plaintiff's seventh cause of action alleges that she is

entitled to punitive damages for the Officers' excessive use of force.  Officers

Bellows, Johnson, and Hendrickson assert that they are entitled to the protection

of qualified immunity from Plaintiff's § 1983 excessive force claim and related

punitive damages claim.

    **1.  Qualified Immunity Standard**

"The purpose of qualified immunity is to allow public officers to carry out

their duties as they believe are correct and consistent with good public policy,

rather than acting out of fear for their own personal financial well being." Sparr

v. Ward, 306 F.3d 589, 593 (8th Cir. 2002) (citation omitted). "Qualified immunity

is an entitlement not to stand trial or face the other burdens of litigation. The

privilege is an immunity from suit rather than a mere defense to liability; and

like an absolute immunity, it is effectively lost if a case is erroneously permitted

to go to trial." Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (citations omitted),

overruled in part on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009).

Therefore, immunity questions should be resolved "at the earliest possible stage

in litigation." Id. at 201 (citation omitted).

"The doctrine of qualified immunity protects government officials from

liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would

have known." Pearson, 555 U.S. at 231 (citation omitted). "Evaluating a claim of

qualified immunity requires a two-step inquiry: (1) whether the facts shown by

the plaintiff make out a violation of a constitutional or statutory right, and

(2) whether that right was clearly established at the time of the defendant's

alleged misconduct."  Estate of Morgan v. Cook, 686 F.3d 494, 496 (8th Cir. 2012)

(citation omitted).

> For a constitutional right to be clearly established, its contours must
> be sufficiently clear that a reasonable official would understand that
> what he is doing violates that right.  This is not to say that an official
> action is protected by qualified immunity unless the very action in
> question has previously been held unlawful, but it is to say that in
> the light of pre-existing law the unlawfulness must be apparent.

Hope v. Pelzer, 536 U.S. 730, 739 (2002) (citations omitted).

 "Whether a given set of facts entitles the official to summary judgment on

qualified immunity grounds is a question of law.  But if there is a genuine

dispute concerning predicate facts material to the qualified immunity issue, there

can be no summary judgment."  Greiner v. City of Champlin, 27 F.3d 1346, 1352

(8th Cir. 1994) (citations omitted).

### 2.  Whether the Officers' Actions Were Objectively Reasonable

"All claims that law enforcement officials used excessive force—deadly or

not—in the course of making an arrest or other 'seizure' of a free citizen are

properly analyzed under the Fourth Amendment."  Cole v. Bone, 993 F.2d 1328,

1332 (8th Cir. 1993) (citation omitted).  "The key question is whether the officers'

actions are objectively reasonable in light of the facts and circumstances

confronting them, without regard to their underlying intent or motivation."

Nance v. Sammis, 586 F.3d 604, 610 (8th Cir. 2009) (citation omitted).

> The reasonableness of an officer's use of force is evaluated by
> looking at the totality of the circumstances, including the severity of
> the crime at issue, whether the suspect poses an immediate threat to
> the safety of the officers or others, and whether he is actively
> resisting arrest or attempting to evade by flight.

Id. (citation omitted).  "Not every push or shove violates the Fourth Amendment,

but force is excessive when the officers' actions are not objectively reasonable in

light of the facts and circumstances confronting them."  Rohrbough v. Hall, 586

F.3d 582, 585 (8th Cir. 2009).

Defendants maintain that they did not violate a constitutional right

because their use of force was reasonable under the circumstances.  Defendants

reason that they arrived at Plaintiff's home to perform a welfare check, there was

a report from a family member that she was suicidal, and Plaintiff screamed at

the Defendants and refused to talk to them when they attempted to interact with

her.

When considering the facts in a light most favorable to Plaintiff, however,

the Court determines that there are genuine issues of material fact as to whether

Defendants violated Plaintiff's constitutional rights by using excessive force

during the welfare check.  The record before the Court does not provide the

Court with sufficient facts for the Court to analyze whether or not the officers engaged in reasonable conduct. The crux of the Officers' argument that they acted reasonably and therefore are entitled to qualified immunity is based on Plaintiff's verbal and non-verbal communication with the Officers and the physical movements that the Officers observed. The record before the Court, however, does not provide the Court with enough detailed factual information to determine whether they acted reasonably. For example, the Officers maintain that they acted reasonably because Plaintiff was screaming. There is no evidence before the Court as to what Plaintiff said or screamed to the Officers other than to tell the Officers to leave her property. Additionally, there are conflicting accounts of what physical movements that the Officers observed and what movements Plaintiff said she made. The factual void in the record prevents the Court from concluding that no genuine issue of material fact exists with respect to the reasonableness of the Officers' conduct.

### 3. Clearly Established Constitutional Right

> A Government official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.

Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011) (citations omitted).

Defendants maintain that the Officers could reasonably believe that they were acting lawfully given the existence of the Community Caretaking Doctrine and the Minnesota Commitment and Treatment Act.  Alternatively, if the Officers did not act reasonably, then they argue that their actions constitute a mistake, which does not prevent them from being protected by qualified immunity.  See Seymour v. City of Des Moines, 519 F.3d 790, 798 (8th Cir. 2008) (finding that an officer is entitled to qualified immunity if the officer makes a "reasonable mistake in supposing that his actions were legal").

There is insufficient evidence before the Court for it to determine whether the Officers reasonably believed that they acted lawfully.  Because there is no detailed evidence as to what Plaintiff said to the Officers and there are conflicting accounts of the Plaintiff's physical movements, the Court concludes that there are genuine issues of material fact as to whether the Officers violated a clearly established constitutional right and therefore determine whether they are entitled to qualified immunity.  See, e.g., Roy v. Regas, Civil No. 11-1258 (DWF/LIB), 2013 WL 50451, at *3-4 (D. Minn. Jan. 3, 2013) (denying Defendants' summary judgment motion because a reasonable juror could conclude that the

officer deprived plaintiff of a clearly established constitutional right by using

excessive force).

### 4.  Punitive Damages

Punitive damages may be awarded in a § 1983 action when "the

defendant's conduct is shown to be motivated by evil motive or intent, or when

it involves reckless or callous indifference to the federally protected rights of

others."  Duncan v. Wells, 23 F.3d 1322, 1324 (8th Cir. 1994).  Because the Court

finds that there are genuine issues of material fact as to whether the Officers are

entitled to qualified immunity, the Court need not reach the issue of punitive

damages.

### C.      State Law Claims

Plaintiff's second, third, and fourth causes of action respectively include

allegations against Officers Bellows, Hendrickson, and Johnson for assault and

battery, false arrest and illegal imprisonment, and intentional infliction of

emotional distress.  Defendants assert that all of the state law claims are barred

as they are entitled to immunity under the Minnesota Commitment and

Treatment Act and to official immunity.

### 1.  The Minnesota Commitment and Treatment Act

Under Minnesota law:

> [a] peace or health officer may take a person into custody and
> transport the person to a licensed physician or treatment facility if
> the officer has reason to believe, either through direct observation of
> the person's behavior, or upon reliable information of the person's
> recent behavior and knowledge of the person's past behavior or
> psychiatric treatment, that the person is mentally ill or
> developmentally disabled and in danger of injuring self or others if
> not immediately detained. . . . The peace officer shall make written
> application for admission of the person to the treatment facility.  The
> application shall contain the peace or health officer's statement
> specifying the reasons for and circumstances under which the
> person was taken into custody.

Minn. Stat. § 253B.05, subd. 2(a).  Minnesota law also provides immunity

from civil or criminal liability:

> [a]ll persons acting in good faith, upon either actual knowledge or
> information thought by them to be reliable, who act pursuant to any
> provision of this chapter or who procedurally or physically assist in
> the commitment of any individual, pursuant to this chapter, are not
> subject to any civil or criminal liability under this chapter.

Minn. Stat. § 253B.23, subd. 4.  The statutory grant of immunity applies to

all persons acting in good faith, and the grant of immunity is not limited to

those who successfully commit someone.  See Mjolsness v. Riley, 524

N.W.2d 528, 531 (Minn. Ct. App. 1994).  The grant of immunity provides

complete immunity from suit.  See Dokman v. County of Hennepin, 637

N.W.2d 286, 293-94 (Minn. Ct. App. 2001) (holding that police officers

acting pursuant to Minn. Stat. § 253B.05, subd. 2(a) were entitled to

qualified immunity).

### 2. Official Immunity Standard

Under Minnesota's official immunity doctrine, "a public official charged

by law with duties which call for the exercise of his judgment or discretion is not

personally liable to an individual for damages unless he is guilty of a willful or

malicious wrong." Elwood v. Rice County, 423 N.W.2d 671, 677 (Minn. 1988)

(citations omitted). The Court uses a two-step inquiry to determine whether

official immunity is available to an officer: "(1) whether the alleged acts are

discretionary or ministerial; and (2)whether the alleged acts, even though of the

type covered by official immunity, were malicious or willful and therefore

stripped of the immunity's protection." Dokman v. County of Hennepin, 637

N.W.2d 286, 296 (Minn. Ct. App. 2001).

Whether an act is discretionary is determined by the Court as a matter of

law. Kelly v. City of Minneapolis, 598 N.W.2d 657, 664 n.5 (Minn. 1999). "Under

Minnesota law, the decision to use deadly force is a discretionary decision

entitling a police officer to official immunity absent a willful or malicious

wrong." Hayek v. City of St. Paul, 488 F.3d 1049, 1056 (8th Cir. 2007) (citing

<u>Maras v. City of Brainerd</u>, 502 N.W.2d 69, 77 (Minn. Ct. App. 1993)).

> [I]n determining whether an official has committed a malicious
> wrong, the fact finder considers whether the official has
> intentionally committed an act that he or she had reason to believe is
> prohibited. [This] standard contemplates less of a subjective inquiry
> into malice, which was traditionally favored at common law, and
> more of an objective inquiry into the legal reasonableness of an
> official's actions.

<u>State by Beaulieu v. City of Mounds View</u>, 518 N.W.2d 567, 571 (Minn. 1994)

(citations omitted). However, to defeat a motion for summary judgment, the

plaintiff is required to "present specific facts evidencing bad faith," rather than

"[m]ere allegations of malice." <u>Semler v. Klang</u>, 743 N.W.2d 273, 279 (Minn. Ct.

App. 2007) (citation omitted).

### 3. Merits of the State Law Claims

Defendants argue that they are entitled to immunity under the Minnesota

Treatment and Commitment Act because they were acting in good faith and

pursuant to what they believed was reliable information that Plaintiff was

suicidal when they performed the welfare check. They also argue that they are

immune from Plaintiff's lawsuit because official immunity bars the claims.

Defendants reason that they were acting in a discretionary capacity when

performing the welfare check, they were obligated to act as they did and would

have been derelict in their duties if they had not acted as they did.  As discussed

above, there is an issue of material fact as to what Plaintiff said to the Officers

and what the Officers observed.  <u>See, e.g.</u>, <u>Roy v. Regas</u>, Civil No. 11-1258

(DWF/LIB), 2013 WL 50451, at *3-4 (D. Minn. Jan. 3, 2013) (denying Defendants'

summary judgment motion because a reasonable juror could conclude that the

officer deprived plaintiff of a clearly established constitutional right by using

excessive force).  Because these facts are not before the Court, the Court cannot

determine, as a matter of law, whether Defendants acted in bad faith or whether

Defendants acted maliciously or willfully.  As a result, summary judgment is not

warranted on the state law claims against Defendants.

Accordingly, based upon the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that Defendants Andy Bellows, Matthew Hendrickson,

Cassandra Johnson, Brian Lindquist, and City of Farmington's motion for

summary judgment [Docket No. 13] is **DENIED**.


Dated:  June 26, 2013                      s/ Michael J. Davis
                                           Michael J. Davis
                                           Chief Judge
                                           United States District Court